IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 14, 2006

## STATE OF TENNESSEE v. SHANNON RICHARD HUDSON, ALIAS RICHARD SHANNON HUDSON

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 241103     Stephen M. Bevil and Jon Kerry Blackwood, Judges**

**No. E2005-02859-CCA-R3-CD - Filed April 27, 2007**

The defendant, Shannon Richard Hudson, was found guilty by a Hamilton County jury of three counts of aggravated sexual battery and one count of attempted aggravated sexual battery. The three counts of aggravated sexual battery were merged, and the defendant received an effective twenty-seven-year sentence in the Department of Correction. He was sentenced to twenty years for the aggravated sexual battery conviction and to seven years for the attempted aggravated sexual battery conviction, to be served consecutively for a total effective sentence of twenty-seven years. On appeal, he contends that: the evidence was insufficient to support the convictions; the trial court erred in allowing the jury to have access to the indictment during their deliberation; and the trial court should have merged all of his convictions. After careful review, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Brian S. Finlay, Chattanooga, Tennessee (on appeal); Ardena J. Garth, District Public Defender; Steve E. Smith and Rob Philyaw, Chattanooga, Tennessee (at trial), for the appellant, Shannon Richard Hudson, Alias Richard Shannon Hudson.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William H. Cox, III, District Attorney General; and Mary S. Moore and Rachel Winfrey, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

These offenses stem from events involving the defendant's then eight-year-old niece. The defendant was indicted on two counts of rape of a child, one count of aggravated sexual battery, one count of attempted aggravated sexual battery, and one count of violation of the sexual offender

registry. The rape of a child charges were based on the victim's statement that the defendant rubbed his penis on her vagina and her bottom and that he ejaculated on her after masturbating. The State contended at trial that slight penetration of both the victim's vaginal and anal openings took place during the incident. The aggravated sexual battery charge was based on the victim's statement that the defendant "pried" her vagina open and touched her there and on her bottom with his hands. The attempted aggravated sexual battery charge was based on the victim's statement that, during the evening, the defendant's penis was hanging out of his shorts and that he dared her on multiple occasions to touch it, but she refused.

On the night of the incident, the victim was spending the night with the defendant and his wife because of an altercation between other family members at the victim's home. She fled her own home to seek refuge in the home of the defendant because her mother's live-in boyfriend and her aunt had engaged in a physical altercation earlier in the evening. The victim, the defendant, and the defendant's wife returned to the defendant's home, and the defendant's wife promptly went to sleep.

The testimony elicited at trial reflected that the victim and the defendant remained awake and played games, including working with three-dimensional puzzles and playing a game referred to as "double dare." At some point during the "double dare" game, the victim testified that the defendant dared her to touch his penis. She recalled that the defendant was wearing "raggedy boxers" and that his penis was hanging out. She said that she refused to touch him, and he further invited her by saying, "Come on, try to touch it. It's beautiful." She again refused, and he said, "never mind." She testified that they continued to work on the puzzle and that the defendant asked her if she knew how girls became pregnant. He told her about "white stuff" and asked if she wanted to see it. She said that he began masturbating and eventually took her to the bathroom and placed her on the toilet. She testified that he told her to pull down her panties, and she complied. She said that he then rubbed himself on her and said that semen "got all over [her] legs." She recalled that he wiped her off with a pair of his boxers and that they then went to bed. She said that the defendant and his wife took her home the following morning.

The following evening, the victim told her mother what had occurred with the defendant. Her mother called the police and took her to the hospital. On cross-examination, the victim was questioned about her statements regarding ghosts. She said that she had seen and heard the ghost of her grandmother. When questioned regarding the altercation at her home on the night of the offense, she testified that she did not see the fight but she saw that her mother's boyfriend had a black eye and she feared that her aunt would return and hurt her.

The defendant's estranged wife testified at trial that she and the victim's aunt, who was involved in the fight, had been drinking alcohol on the night of the incident. She recalled that they stopped by the victim's home so they could brush their teeth and use mouthwash because the aunt involved in the fight did not want her husband to know that she had been drinking. They continued to drink at the victim's home until the fight occurred. She said that the victim was very afraid and wanted to go home with her. She believed that the victim and the defendant went to bed at approximately 7:00 p.m. She said that the defendant told her they worked puzzles and played with

wigs. She recalled that they took the victim home between eleven and twelve in the morning. The defendant left the victim at her home and then went to work. Later that day, the defendant's wife took the victim and some other children to swim. After it began to rain, she took the victim home and then went on to her own residence. She was later called back to the victim's home and informed of the allegations against the defendant.

She testified that someone called the police while she went to look for the defendant. She said that the defendant denied everything when she confronted him; however, they left the state and traveled first to Georgia and then to Alabama. She recalled that, when she discussed DNA evidence with the defendant, he said, "Well, we didn't have any toilet paper at the house and when [the victim] went to the bathroom she wiped on my underwear, so I need you to tell them that we had sex and you wiped on those underwear." She said that she took the defendant to West Virginia and that they stayed a week before she gave him her car and some money and told him to surrender to the authorities. She learned in September that the defendant had not turned himself in. She contacted the defendant and asked him to meet her; she then called police to tell them where he would be. The defendant was arrested on arrival. She testified that she had strange feelings about the defendant's interactions with the victim prior to the assault. She also testified that the defendant had previously abused her.

A pediatric nurse practitioner testified that she saw the victim after the offense. She said the victim told her that the assault occurred around 3:00 a.m. on July 23, 2002. She said that there was "white stuff" on her leg. She also said that the defendant touched her "private" with his and that he told her not to tell. She examined the victim and discovered a partial hand print on the back of the child's upper right thigh, which she opined was larger than a child's hand print. She said there was no injury to the victim's vaginal area. She testified that the victim mentioned ghosts to her and that she recommended the victim attend counseling.

The victim's mother testified that, on the night of the assault, her children did not see the altercation between her boyfriend and sister-in-law but they could hear the fight. She acknowledged that she was aware that the defendant and his wife did not have electricity at their residence. She said that she awoke at approximately 10:00 a.m. the following morning to see the defendant standing beside the bed, calling her name. She recalled the defendant telling her that the victim was a very beautiful and intelligent child. She also recalled the victim asked her to take a bath several times that evening which was unusual. The victim later told her that the defendant touched her "private spot" with his private, and the victim's mother called the police. She said that the defendant's wife "fell apart" when she was informed of the victim's story. She recalled that the defendant's wife said that the defendant did the same things to her. The victim's mother took the victim to the hospital and then to the Child Advocacy Center. During the examination at the Child Advocacy Center, the victim's mother saw the prints on the victim's leg under the black light. She has moved her family from the home they were occupying at the time of the offense, and the victim is in counseling once a week.

The physician who examined the victim testified that the victim's genital area appeared normal but stated that evidence of touching and rubbing would not show up in a physical examination. She recalled that the victim stated, "I was brave enough to tell my mom."

The forensic interview coordinator at the Child Advocacy Center testified that she interviewed the victim. She said that children who have been coached, generally cannot give details concerning the facts of the case, and that this victim gave a great deal of detail about the assault. She testified that knowledge of semen and where it comes from is not age appropriate material for an eight-year-old. It was her opinion that the victim had not been coached. The victim used children's language to describe what had happened to her. She said that the victim used a drawing to indicate that the defendant's "wiener" touched her "crotch" and her bottom and circled the areas on the drawing. The victim told her that they were in the bathroom when the touching occurred and that the defendant showed her "the white stuff" in the bathroom.

The jury convicted the defendant of three counts of aggravated sexual battery and one count of attempted aggravated sexual battery. The court imposed a sentence of twenty years after merging counts one and two, a sentence of twenty years for count three, and a sentence of seven years for count four, for a total effective sentence of forty-seven years. The trial court later resentenced the defendant by merging counts one, two, and three, which reduced the defendant's sentence to twenty-seven years.

<u>Analysis</u>

Initially, we will examine the defendant's claim that the evidence was insufficient to support his convictions. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Brewer</u>, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence, <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. <u>Liakas v. State</u>, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. <u>State v. Elkins</u>, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. <u>Id.</u> In <u>State v. Grace</u>, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury,

approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Here, the defendant contends that the physical evidence undermines the victim's claim rather than bolsters it. He also suggests that the victim's testimony was unreliable because she was eleven years old at trial and was testifying about an event that occurred when she was eight years of age. He minimizes the victim's credibility by arguing that the incriminating evidence consists only of "vague recollections" of a child with a history of hallucinations. The State contends that there was sufficient evidence to support the jury verdict of conviction.

The proof in this case reflects that, on the night of July 22, 2002, the victim went home with the defendant and his wife. When they arrived at the defendant's home, the defendant's wife, who had been drinking earlier in the evening, went to sleep. The defendant and the victim stayed awake, worked on a puzzle, and played a game called "double dare." The victim claimed that, during the game, the defendant dared her to touch his penis, which she said was hanging out of his boxers. She refused, and the defendant said, "Come on, try to touch it. It's beautiful." She again refused, and the defendant told her to "never mind." They resumed working on the puzzle, and the defendant asked her if she knew how a girl became pregnant. He told her about "white stuff" and asked if she wanted to see it. She said the defendant began masturbating, took her into the bathroom, sat her on the toilet, asked her to remove her underwear, rubbed his penis on her legs and vagina, and continued masturbating until semen "got all over [her] legs and stuff." She said he wiped her with a pair of boxer shorts from the floor and told her not to tell anyone.

The victim told her mother what had happened, and her mother phoned the police. The victim was examined at the hospital and at the Child Advocacy Center, where she was examined under a black light. The examination revealed a partial hand print, larger than a child's hand, on the back of the victim's upper, right thigh. There was testimony at trial that the victim was able to give a great deal of description concerning the offense. The witness opined that the child was not coached and that she used a child's language to describe what had happened to her. She used a drawing to indicate that the defendant had used his "wiener" to touch her "crotch" and her bottom.

The defendant's chief argument is that the victim's testimony was not credible. However, as previously stated, it is the trier of fact, not this court, that resolves questions concerning the credibility of the witnesses. State v. Elkins, 102 S.W.3d at 581. A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. State v. Grace, 493 S.W.2d at 476. The defendant has not shown any reason on appeal to discredit the testimony of the child. The defendant argues that the child was not reliable because she has claimed to see ghosts. However, that testimony was

elicited at trial. By its verdict, the jury accredited the victim's testimony in returning the guilty verdict, and we see no reason to overturn that decision. Based on the evidence presented at trial, a rational trier of fact could have found beyond a reasonable doubt that the defendant was responsible for the commission of these offenses. Accordingly, we affirm the judgments from the trial court.

Next, the defendant contends that the trial court erred in allowing the indictment into the jury room during deliberations. The defendant was initially charged with five counts in his indictment. The fifth count of the indictment, violation of the sexual offender registry, was severed prior to trial. Prior to trial, the defendant moved to have the indictment excluded from the jury room; instead, the court ordered that the jury would have access to the indictment if the fifth count was marked out. The defendant contends that allowing the jury access to the indictment implied to the jury that he had previously been convicted as a sex offender and claims that knowledge would taint the jury beyond repair. Interestingly, the defendant acknowledges that the form of the indictment given to the jury is not in the record and, therefore, cannot show that the indictment given was prejudicial. He merely suggests, without proof, that the jury was prejudiced by knowledge that the defendant had a prior conviction for a sex crime. He does not show that the count was defectively marked out. The defendant does not show that the jury had any knowledge of the fifth count of the indictment.

It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). The defendant has not provided either a copy of the transcript of the pretrial hearing in this matter or a copy of the indictment given to the jury. The failure to prepare an adequate record for review may result in a waiver of an issue. Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). Because the defendant has not prepared an adequate record on appeal, this issue is waived.

Finally, the defendant argues that both convictions should have been merged into one conviction for aggravated sexual battery. The State argues that the record supports the trial court's decision and maintains that separate convictions do not violate double jeopardy. We agree.

In State v. Barney, 986 S.W.2d 545 (Tenn. 1999), the Tennessee Supreme Court held that separate convictions for rape of a child and aggravated sexual battery, arising out of the same incident, did not violate due process or double jeopardy principles. The Court concluded that the "essential incidental" test, as developed in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), and its progeny, is not helpful in the context of sexual offenses because each separate sexual act "is capable of producing its own attending fear, humiliation, pain, and damage to the victim." Barney, 986 S.W.2d at 548 (quoting State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996)). Instead, the Court adopted the test articulated in People v. Madera, 231 Cal. App. 3d 845, 282 Cal. Rptr. 674 (1991), for determining whether two or more sexual acts may be the subject of separate convictions. Thus the appropriate inquiry is as follows:

> [I]f the act in question directly facilitates or is merely incidental to the accompanying sexual conduct (such as, for example, applying lubricant to the area of intended copulation), convictions for both acts would be barred. . . . If, however, the act in

question is "prepatory" only in the sense that it is intended to sexually arouse either the victim or the perpetrator, separate convictions are not barred.

Barney, 986 S.W.2d at 548.

The State contends that the allegations of this case and the victim's trial testimony support separate convictions for aggravated sexual battery and attempted aggravated sexual battery. Both incidents constitute separate distinct indignities against the victim and would be sufficient to support separate convictions and sentences. On May 20, 2003, the State set out the specific incidents that gave rise to each count in a bill of particulars filed with the trial court. The attempted aggravated sexual battery charge was based on the child's statement that, during that evening, the defendant's penis was hanging out of his shorts and that he dared her to touch it. She twice refused, the defendant told her "never mind," and they went back to working on a puzzle. The aggravated sexual battery charge was based on the child's statement that he "pried" her vagina open and touched her there and on her bottom with his hands. The rape of a child charges are based on the child's statement that the defendant rubbed his penis on her vagina and bottom and ejaculated on her leg. Before trial, it was the State's position that slight penetration of both the child's vaginal and anal openings took place during this activity. Both incidents, though they occurred in close proximity, were not performed simultaneously. The State contends that both actions did not directly facilitate the other, and we agree. The State's argument is supported by the defendant's action of abandoning his attempt to have the victim touch him after she refused. Separate convictions and sentences in this case are justified and do not violate due process. This issue is without merit.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE